[Civ. No. 30776.   Second Dist., Div. One.   Sept. 2, 1966.]

AL ROSEN, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LIPPERT INCORPORATED, Real Party in Interest.

J. Frederick Rosen and James A. Withers for Petitioner.

No appearance for Respondent.

Prinzmetal & Maizlish and Leonard Maizlish for Real Party in Interest.

McCOY, J. pro tem.*—In an action entitled *Lippert Inc.* v. *Al Rosen,* number WEC 5920, pending in the respondent court, the court denied the motion of defendant Rosen for an order imposing sanctions pursuant to Code of Civil Procedure, section 2019, subdivision (g). Rosen has petitioned this court for a writ of mandate commanding the respondent court to desist from the trial of that action until further order of this court and commanding the respondent court to impose sanctions against plaintiff according to law. We issued an alternative writ on petitioner's showing of probable abuse of discretion by the respondent court. (*West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407, 415 [15 Cal.Rptr. 119, 364 P.2d 295].)

## THE FACTS

In October 1964 the plaintiff, real party in interest here, filed its complaint for damages based on alleged fraud and breach of contract by defendant Rosen, petitioner here. The gist of the complaint is that in May 1964 petitioner, herein referred to as Rosen, executed an "ASSIGNMENT OF ALL RIGHTS" to the real party in interest, herein referred to as Lippert, whereby he sold and transferred to Lippert a certain original story and screenplay entitled "TROUBLED WATERS," for which Lippert paid Rosen $5,000. It is alleged that Rosen

*Assigned by the Chairman of the Judicial Council.

thereby represented to Lippert that he was the sole owner of said work, and that he had not theretofore granted any rights therein to anyone, whereas, in fact, Rosen was not the sole author and had previously executed an assignment of his rights in the work to another party, and that Rosen's representations were false and had been made for the purpose of inducing Lippert to purchase the work and to produce a motion picture based thereon. By reason thereof, Lippert sought general damages in the sum of $100,000 and exemplary damages in the sum of $250,000.

The action was first set for trial on April 18, 1966. On April 20 it was continued to July 6, 1966. After the continuance was granted, Lippert's attorneys learned that one Hannah Fisher, a material witness living in New York, would be unable to be present at the trial on July 6. They therefore obtained a commission to take her deposition in New York to be used as evidence in support of Lippert's case. The order for the issuance of the commission was made on May 27, and on the same day Lippert's attorneys served notice on Rosen that the deposition would be taken on June 23, 1966, at 2 p.m. Eastern Daylight Time ''in the offices of Englander and Englander, 250 West 57th Street, New York,'' on oral interrogatories. Pursuant to said notice J. F. Rosen, petitioner's attorney, traveled to New York, only to learn on June 23 that the taking of the deposition had been postponed by the New York attorney employed by Lippert to take the deposition, without notice to Rosen or his attorney.

On his return to California, Rosen's attorney noticed a motion in the respondent court for an order imposing sanctions against Lippert and its attorneys pursuant to Code of Civil Procedure, section 1019, subdivision (g). The respondent court denied the motion on July 1, whereupon Rosen filed his petition now before this court.

The rather shabby treatment accorded to Rosen's attorney in this matter is disclosed by his declaration filed in support of his motion, a copy of which is attached to his petition here. This declaration shows without contradiction that in response to the notice to take Hannah Fisher's deposition, Rosen's attorney, who resides and has his office in Coachella, California, drove approximately 130 miles to the Los Angeles International Airport on Monday evening, June 20, 1966, and left that airport the next morning, flying directly to New York. Shortly before 2 o'clock on the afternoon of June 23, he arrived at the office of Englander and Englander, where he

was met by one Isidore Englander, who told him he was the attorney for the witness. Englander then informed Rosen's attorney that one Harry B. Kurzrok had been engaged by Lippert to take the deposition, that the witness would not be present for the taking of her deposition at the time noticed, and that no subpoena compelling her attendance had been served on her. Englander then called Kurzrok, and Rosen's attorney talked with him over the telephone. During that conversation Kurzrok stated that no subpoena had been served on the witness; that he and Englander had agreed to take the deposition on June 27, but that they had not given anyone notice of the change; that they intended to take the deposition on June 27 without stipulation of the parties or without court order and that he (Kurzrok) would obtain a court order requiring Rosen's attorney to remain in New York until then. Rosen's attorney told Kurzrok he would remain in New York until June 27 for the deposition if he were reimbursed for all reasonable expenses, including attorney's fees, caused by the delay, but Kurzrok refused to agree to make any such payments. Rosen's attorney thereupon returned to California.

The allegations of the declaration filed by Rosen's attorney in support of the motion are not only uncontradicted, in the main they are confirmed by the unsworn statement written and signed by I. Englander, a copy of which was submitted to the respondent court with the declaration of Rosen's attorney. They are also supported in several particulars by the declaration of Leonard Maizlish, one of Lippert's attorneys of record, filed in opposition to Rosen's motion. It specifically appears from both Englander's statement and Maizlish's declaration that the continuance of the deposition was agreed on by Englander and Kurzrok on June 22 at the request of the witness. Other allegations of Maizlish's completely unredeeming declaration will be noted below.

## THE DISCRETION OF THE TRIAL COURT

''A deposition is a written declaration, under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine.'' (Code Civ. Proc., § 2004; *People* v. *Hjelm,* 224 Cal.App.2d 649, 654, 655 [37 Cal.Rptr. 36].) A party to a pending action may take testimony by deposition upon oral examination for use as evidence as well as for the purpose of discovery. (Code Civ. Proc., § 2016, subd. (a).) At the trial a deposition may only be used ''against any party who was present or represented at the taking of the deposition or who had due notice thereof.'' (Code Civ. Proc.,

§ 2016, subd. (d).) The procedure for the taking of a deposition for the purpose of discovery or for use as evidence is the same. Accordingly, the right of a party to take a deposition for any purpose is conditioned upon his giving notice in writing to every other party to the action of the time and place for the taking of the deposition, whether it is to be taken within this state, (*id.*, § 2019, subd. (a)), or out of this state (*id.*, § 2024).

By adopting sections 2016 through 2035 of the Code of Civil Procedure, the Legislature provided ''streamlined and less burdensome mechanics for the actual noticing and taking of depositions both in and out of the state, and upon either oral examination or written interrogatories.'' At the same time it was aware of the necessity for new methods of controlling abuse which did not exist before. (*Greyhound Corp.* v. *Superior Court*, 56 Cal.2d 355, 372, 373 [15 Cal.Rptr. 90, 364 P.2d 266].) To that end the trial court is authorized to make appropriate orders for the protection of both parties and deponents either before the taking of a deposition (Code Civ. Proc., § 2019, subd. (b) (1)), or while the deposition is being taken (Code Civ. Proc., § 2019, subd. (d)). The power to prevent abuse which is bestowed on the trial court by these provisions ''is the power to exercise discretion based upon the factual showing made. When the record indicates facts on which the court exercised its discretion, that exercise will not be disturbed on appeal; when the facts are undisputed, or there is but one reasonable interpretation thereof, the question ceases to be fact, and is one of law.'' (*Greyhound Corp.* v. *Superior Court, supra*, at p. 383.)

The trial court also has power, in the exercise of its discretion, to impose sanctions against a party who abuses his right to take a deposition (Code Civ. Proc., § 2019, subd. (g)), or against a party or his attorney, or both, when the party willfully fails to appear for the taking of his deposition (Code Civ. Proc., § 2034, subd. (d)).[1]

Section 2019, subdivision (g), Code of Civil Procedure provides that ''If the party giving the notice of the taking of a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the

---

[1]Sanctions may also be imposed against a party or deponent who, ''without substantial justification,'' refuses to make discovery, and against the party or attorney advising such refusal, or either of them, as well as against the examining party and his attorney, or either of them, when the motion for the imposition of such sanctions is made without substantial justification. (Code Civ. Proc., § 2034, subd. (a).)

notice," or "If the party giving the notice of the taking of a deposition of a witness fails to serve a subpoena upon him and the witness because of such failure does not attend, and if another party attends in person or by attorney because he expects the deposition of that witness to be taken, the court may order the party giving the notice to pay to such other party the amount of the reasonable expenses incurred by him and his attorney in so attending, including reasonable attorney's fees." ▮ These provisions are identical to those of subdivision (g) of rule 30, Federal Rules of Civil Procedure, and are applicable in all cases regardless of the purpose for which the deposition is being taken. The provisions of section 2019, subdivision (g) are comparable in their purpose to the provisions of section 2034, subdivision (d), which provide for the imposition of similar sanctions against a party who "willfully fails to appear before the officer who is to take his deposition, after said party or his attorney has been served with a prior notice in accordance with the provisions of subdivision (a) (4) of Section 2019 of this code."

No case has been found in which an appellate court in this state has considered the provisions of section 2019, subdivision (g), Code of Civil Procedure. *Detsch & Co.* v. *American Products Co.,* 141 F.2d 662, 663, is apparently the only decision of an appellate court involving the imposition of sanctions under rule 30, subdivision (g) of the Federal Rules of Civil Procedure. In that case defendant's attorney traveled from San Francisco to Los Angeles for the purpose of attending a properly noticed deposition and was not advised that the witness had been excused by the attorney giving the notice until after the time set for the taking of the deposition. The court affirmed an order of the trial court requiring plaintiff to pay defendant the reasonable expenses thereby incurred by its attorney, including an attorney's fee. The court there noted that rule 30, subdivision (g), "relates to expenses incurred, whether paid or unpaid."

The power of the trial court to impose sanctions against a party to a lawsuit in appropriate cases has long been recognized in this state. For example, section 473, Code of Civil Procedure, provides that the court may "in furtherance of justice, and on such terms as may be proper," allow a party to amend his pleadings; in such a case, when a continuance of the trial is necessary because of the amendment, the court may "require, as a condition to the amendment, the payment to the adverse party of such costs as may be just." In *Williams* v.

*Myer,* 150 Cal. 714, 718 [89 P. 972], where an amendment raising a new issue had been allowed on the morning of the trial, the court said that ''In imposing such terms it is not to be understood that the court is constrained to allowing a party only such costs as might be properly taxed in the case. A reasonable discretion may be exercised in compensating him for expenses to which he has been put, although they may not be recoverable as costs. . . . But whatever the terms, they should be such as have relation to expenses or charges incurred by the parties to the trial, or directly with reference to it, and be imposed with a view mainly of compensating the party prejudiced by granting the amendment.'' (See 2 Witkin, Cal. Procedure (1954) Pleading, § 594, p. 1606.)

Similarly, ''When an application is made to a court or referee to postpone a trial, the payment of costs occasioned by the postponement may be imposed, in the discretion of the court or referee, as a condition of granting the same.'' (Code Civ. Proc., § 1024.) Here, too, the allowance is not limited to the items taxable as costs after the trial; the court may award any reasonable amount to compensate the other party for his expenses incurred in preparing for trial at the appointed time, including transportation and hotel bills of parties, attorneys and witnesses. (2 Witkin, Cal. Procedure (1954) Trial, § 26, p. 1754, and 1965 Supp., p. 613.)

The same rule prevails when a party, on a motion under section 473, Code of Civil Procedure, is granted relief ''from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.'' The code provides that such motions may be granted ''upon such terms as may be just.'' Here again, the court may require the payment of costs or attorney's fees to the adverse party to compensate him for loss or expense which he may suffer by the granting of the motion. (3 Witkin, Cal. Procedure (1954) Attack on Judgment in Trial Court, § 63, p. 2114 and 1965 Supp. p. 809.)

Sections 2019, subdivisions (b) (1), (d) and (g), 2034, subdivisions (a) and (d), Code of Civil Procedure, grant power to the trial court to impose similar sanctions in relation to deposition and discovery proceedings in the exercise of its discretion. ■ The nature of such sanctions is the same as those which may be imposed under sections 473 and 1024, Code of Civil Procedure, and serve the same purpose.

The power of the trial courts to impose sanctions under provisions of section 2034, subdivision (d) has been considered

by the appellate courts of this state on several occasions. In *Crummer* v. *Beeler,* 185 Cal.App.2d 851 [8 Cal.Rptr. 698], the court reviewed an order of the trial court striking the answer of defendant and entering his default because of his failure to attend his deposition as noticed by the plaintiff. Noting that the question before it was whether the sanctions imposed by the trial court ''were reasonable or justifiable or an abuse of discretion,'' the court said (p. 858) : ''On many occasions the courts have attempted to define 'abuse of discretion.' In *Sharon* v. *Sharon,* 75 Cal.1 at p. 48 [16 P. 345], the court had this to say : 'In a legal sense, discretion is abused whenever, in its exercise a court exceeds the bounds of reason,—all the circumstances before it being considered.' '' The court held that in the circumstances of the case before it, there being some question whether the failure of defendant to appear for his deposition was willful, ''the penalty assessed here is too 'drastic' and constitutes a clear abuse of discretion. It should be noted, however, that a penalty assessed which included payment of respondent's costs and attorney's fees in attending in connection with the proceeding, would have been more justifiable.'' (P. 860.)

In *Lund* v. *Superior Court,* 61 Cal.2d 698 [39 Cal.Rptr. 891, 394 P.2d 707], the court said (p. 712) : ''When the discovery statutes were adopted in 1957 (Stats. 1957, ch. 1904, p. 3322 et seq.) it was contemplated that the new procedures, many of which were to be accomplished without prior court order, would require enforcement by the court when recalcitrant attorneys or parties failed to comply. For that reason, section 2034 dealing with the refusal to make discovery and its consequences, was included.''

The propriety of imposing sanctions under section 2034, subdivision (d) was again before the court in *Weinkauf* v. *Superior Court,* 64 Cal.2d 662, 664 [51 Cal.Rptr. 100, 414 P.2d 36]. In denying a writ of prohibition the court there sustained an order of the trial court requiring the attorney for a defendant who had failed to answer certain interrogatories to pay plaintiff $500 as expenses and attorney's fees incurred in making the motion. The court held that the trial court had jurisdiction to make such an order by reason of the ''mandate of the statute.''

In *Weinkauf* v. *Superior Court, supra,* the court reiterated the rule that, in such cases as this, the burden is on the petitioner to show that the trial court abused its discretion. We are satisfied that such a showing has been made by petitioner

here. The uncontradicted facts on which petitioner sought the imposition of sanctions are set forth below.

█ There is nothing in the showing made by plaintiff in the court below in opposition to warrant the denial of petitioner's motion. Plaintiff's attorney, Maizlish, alleges in his declaration that at no time did anyone representing petitioner "indicate to me in any way that Mr. Rosen [petitioner's attorney] would travel to New York for the taking of this deposition," and that when Rosen arrived in New York he made no contact either with Englander or Kurzrok before he appeared in Englander's office at the time noticed for the taking of the deposition. Apart from the fact that, until he arrived at Englander's office, petitioner's attorney did not know that Kurzrok had any connection with the matter, these statements by Maizlish are immaterial. Petitioner's attorney was under no obligation to inform Maizlish. whether he was going to New York or not, or to contact Englander before the time set for the deposition. █ Having given notice of the taking of the deposition it was Maizlish's duty to have the witness present at the time set for her deposition on the assumption that petitioner's attorney would appear and avail himself of the right of cross-examination, or to give defendant timely notice that the deposition would not be taken as noticed, just as it was the right of petitioner's attorney to rely on the notice of that deposition which had been served on him.

In its brief in this court the real party in interest suggests that there is no provision in the laws of this state for the issuance of a subpoena to compel the attendance of a nonresident witness for the taking of his deposition at the place of his residence. This, of course, is true. Counsel, however, overlook the fact that so far as material here, section 3102, New York Civil Procedure Law and Rules, is identical with section 2023 of the California Code of Civil Procedure. █ Under this provision, it would have been a simple matter to obtain a subpoena in New York for the attendance of the witness.

Maizlish also complains that petitioner's attorney refused to stay over in New York for an additional four days so that the deposition could be taken on June 27, even though Englander and Kurzrok implored him to do so. █ Petitioner's attorney was under no obligation to stay over for the deposition, and in the circumstances disclosed by the record, was not at fault in returning to California when he did.

In his points and authorities filed with the trial court, Maizlish argued on the authority of *Hoge* v. *Lava Cap Gold Min.*

*Corp.,* 55 Cal.App.2d 176 [130 P.2d 470], that if defendant prevails at the trial his expenses incurred in connection with the abortive deposition can be recovered as costs, and "that it would be in the interest of justice to hold the matter of costs in abeyance until the litigation is determined on its merits . . . To do otherwise might result in the enrichment of counsel for a defendant found guilty of fraud." He makes the same argument here. This argument is wholly without merit.

█ The statutory right to seek imposition of sanctions in a proper case extends to all parties, regardless of the outcome of the litigation. As we have seen, the sanctions which may be imposed are not limited to the costs which might be properly taxed against the losing party after trial of the action.

There can be no doubt that the trial court had the power under section 2019, subdivision (g), Code of Civil Procedure to order the plaintiff whose attorney had given notice of the taking of the deposition to pay to defendant the reasonable expenses incurred by him and by his attorney in attending at the time and place set forth in the notice, including reasonable attorney's fees. █ In the absence of any adequate rebuttal to the factual showing made by petitioner in support of his motion, "there was no disputed fact before the trial court. There was, therefore, no room for the respondent court to exercise any discretion. In *Greyhound* it was pointed out (at p. 383) that discretion is not exercised by simply granting or denying discovery, but must be predicated upon certain factors therein set forth. (See also *Singer* v. *Superior Court,* 54 Cal.2d 318, 327 [5 Cal.Rptr. 697, 353 P.2d 305].) None of those factors were present here. Hence, there was no room for the exercise of discretion." (*Beesley* v. *Superior Court,* 58 Cal.2d 205, 208 [23 Cal.Rptr. 390, 373 P.2d 454].)

Although not required to do so, since they were not before the trial court (*Gutierrez* v. *Superior Court,* 243 Cal.App.2d 710, 729-730 [52 Cal.Rptr. 592]), we have considered the affidavits of Harry Kurzrok and Isidore Englander filed with this court by the real party in interest. Except for the denial by both these gentlemen that Rosen's attorney offered to stay over in New York if he were paid his expenses occasioned by the delay, there is nothing in these affidavits which materially changes the showing made by petitioner in the trial court. Englander says in his affidavit that it was his partner who spoke to Mr. Kurzrok on June 22, the day before the time set for the deposition, "and requested that Mrs. Fisher's deposition be continued for a few days for important personal

reasons. Mr. Kurzrok kindly consented to the adjournment. This was not unusual procedure for a deposition.'' ▉ While this may be the usual procedure when all parties agree to an adjournment, it is obvious that such an adjournment without notice to Rosen was not proper. (Cf. *Detsch & Co.* v. *American Products Co.*, 141 F.2d 662, and *Bauer* v. *State*, 144 Cal. 740, 747 [78 P. 280].)

▉ In the case here the outright denial of petitioner's motion constituted an abuse of the trial court's discretion under the rules stated above. ▉ We cannot, however, direct the court to grant the motion in its entirety, since the amount which plaintiff should be ordered to pay to defendant rests in the discretion of the trial court.

The alternative writ is discharged. Let a peremptory writ issue commanding the respondent court to reset petitioner's motion for the imposition of sanctions pursuant to section 2019, subdivision (g), Code of Civil Procedure, on notice to both parties, for hearing and determination before the action is tried, and to order plaintiff to pay defendant the reasonable expenses incurred by him and his attorney in attending at the time and place noticed by plaintiff for the taking of the deposition of Hannah Fisher, including reasonable attorney's fees.

Wood, P. J., and Lillie, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 26, 1966.